UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:12CR35 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER BOYKO |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| TORIANO ANTOINE GOODWIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter is before the Court on Defendant's Motion to Suppress Evidence Obtained Pursuant to Warranted Search of Private Residence of Defendant Toriano Goodwin.  The Court, having considered the Motion, Opposition and the Exhibits, DENIES Defendant's Motion without an evidentiary hearing.[1]

---

[1] The Court finds no material facts in dispute and is called upon to decide whether the Magistrate Judge was legally justified in approving and issuing the Search Warrant.  The Court need only address one fact questioned by the defense, to wit; the date listed in the Affidavit(August 28, 2011), versus the September 3, 2011 date, the latter date wherein Richard McCormick allegedly e-mailed Brian White photographs of the Ruger machine gun and a .22 caliber handgun with two magazines.  If the August 28th date were in fact true, the e-mail would have been impossible since McCormack would have been in custody.  As the Government

1

**PROCEDURE**

The Court need only look to the Affidavit of ATF Special Agent Matthew J. Hartnett to ascertain the facts and circumstances necessary to rule upon Defendant's Motion. Even though the Court looks at the four corners of the Affidavit to determine the legality of the Search Warrant, (the Warrant) the Court must "ensure that the magistrate had a substantial basis for concluding that probable cause existed...In determining whether the Search Warrant should issue, "the task of the issuing magistrate judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004) (en banc).

**ANALYSIS**

Defendant moves the Court to suppress the warrant and Defendant's statements as fruits of an illegal search for three reasons: (1) The warrant issued on the basis of stale information, (2) There was insufficient evidence to establish probable cause that the

---

correctly acknowledges in its first footnote, there was a typographical error with respect to the traffic stop date. The Affidavit should have stated September 28, 2011, instead of August 28, 2011. This is of no moment because the defense was provided with a copy of the traffic stop report on January 24, 2012 with the correct date. Further, it would not have been readily apparent to the Magistrate Judge in reviewing the Affidavit that there would be a discrepancy between the two dates. Also, even if the dates listed in the Affidavit were correct, the Magistrate Judge would not have known from the Affidavit alone whether McCormick was, in fact, in custody and unable to e-mail White. That is why the defense cannot use a date they knew was wrong in the Affidavit, even if the Magistrate were charged with knowledge of the discrepancy. Since there are no "contested issues of fact that bear upon the legality of the search," the Court may forgo conducting an evidentiary hearing. *United States v. Thompson* 2001 WL 820905 at 4 (6th Cir.2001).

premises searched would be the situs of the contraband that was the object of the search (i.e. the machine gun), (3) There was insufficient evidence of the reliability of the information provided to the affiant to justify the warrant's issue. (Motion at 2.)

### A. <u>STALENESS</u>

Defendant argues that there was no reasonable way to determine when Watson sold the machine gun to the Defendant, no way to determine when McCormick stole the firearms from the stepfather, nor when the stepfather noticed the firearms were missing. Also, Defendant argues about the inconsistencies between the August 28, 2011, and September 3, 2011, events (already discussed by the Court in Footnote 1, *supra*) , and the lack of identifying information as to whether the photographs sent by McCormick to White were the same machine gun in the Warrant. Finally, the Defendant notes the lack of information as to White's disposition of the weapon.[2]

The Government counters by arguing the information supporting the Warrant was not stale because time is relative to the circumstances in any given case, especially when dealing with durable, valuable and unique items, such as the machine gun at issue. Initially, the Court agrees with the Government's contention that there is a maximum three month span between September 3, 2011, (the date McCormick offered to sell the machine gun to White) and December 15, 2011, (four days before the Warrant issued when Watson admitted brokering the sale of the machine gun to Defendant).

In other types of cases, this span of time would render information stale and justify

---

[2] In *United States v. Allen*, 211 F. 3d 970 (6th Cir. 2000), the Sixth Circuit stated "the affidavit is judged on the adequacy of what it does contain, not what it lacks, or what a critic might say should have been added." at 975.

a judicial officer refusing to issue a warrant. However, when dealing with an item such as a machine gun, time is less a demanding master, giving way to economic value, uniqueness, durability and, in this Court's view, "the thrill of danger."

Based upon the aforementioned factors, the question under Sixth Circuit Law is "whether the information contained in the affidavit...established that there was a fair probability that evidence would still be found at the location of the search." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006). The nature of the alleged offenses to wit, Felon in Possession of a Firearm (18 U.S.C. § 922(g), and Possession of Unregistered Firearms (18 U.S.C. Title 26 § 5861(d) and 5871), make these continuing offenses of possession, not acquisition, and bear upon the length of time affecting staleness. "Firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time." *United States v. Pritchett*, 2002 WL 1478584**3 (6th Cir. 2002). Also, information from a confidential informant who saw a defendant possess a machine gun two years earlier was not stale because "firearms are not perishable items.*" United States v. Lancaster*, 2005 WL 1799385**5 (6th Cir. 2005).

Beyond durability, there is economic value, which is closely associated with uniqueness. The Court takes judicial notice that machine guns, in general, are more expensive than an ordinary rifle, pistol, or revolver, simply because they require a special license and are more closely regulated because of the tremendous firepower inherent in the weapon. The federal regulations, firepower, legendary history and "status in the weapons arena" ties in with the thrill of danger mentioned earlier.

What does all this mean in terms of staleness? Because the Court is permitted, even required, to draw all reasonable inferences from the facts and circumstances in this case,

4

the Court looks not only at the above factors, but also the following: (1) The original owner, Charles Moesher, kept the machine gun, along with other weapons, in his home, locked in a safe; (2) McCormick, who lived with Moesher, stole the machine gun from Moesher's home; (3) McCormick, who tried to sell the machine gun to White, told White it was worth between $9000-$12,000, and you had to have a Class III License to legally have it; (4) Kevin Watson, who was arrested after a buy-bust, admitted he brokered the deal between McCormick and Defendant; (5) Defendant's statement to Watson that he (Defendant) "intended to keep the machine gun and not get rid of it because it was so unique;" (6) Agent Hartnett, an experienced ATF Agent, stated that "through training and experience, (he) knows that machine guns, due to their inherent value and scarcity, are ...(well) maintained by their possessors in their homes." (Affidavit, para.6)

Therefore, the above facts and circumstances lead the Court to conclude that the information in the Affidavit was not stale and places this decision in line with Sixth Circuit precedent. *Accord*, *Lancaster, supra,* (two-month span), *Pritchett*, *supra* (four month span).

The Court's comment on the "thrill of danger" also supports this conclusion. When one has a machine gun, a valuable and notoriously dangerous weapon, you keep it close, accessible and hidden. This is true more so than other valuable items, such as jewelry, where one could place the same in a safety deposit box at a bank, as well as keep it in a secure location at home. However, the Court is unaware of anyone found to have kept a machine gun in a bank vault or away from a hidden and/or secure, "within arms reach" location.

Finally, one may deduce from the above comments the tie-in, and carryover, from

5

staleness to nexus, in determining whether there was a fair probability that the machine gun would be found in Defendant's residence.

### B. RELIABILITY

The Defendant has argued that Watson's information is unreliable, creating a legally deficient gap in the Affidavit requiring the Court to suppress the Warrant. We start with the Sixth Circuit's guidance in *United States v. Gunter* which stated: "When confronted with hearsay information from a confidential informant..., the court should consider three factors in connection with the totality of circumstances inquiry: the (1) veracity; (2) reliability; and (3) basis of knowledge of the ...informant. These three factors should not be applied rigidly as a test, but should be considered in weighing all of the circumstances." 2009 WL 37481 (6th Cir. 2009). These factors are not rigid categories and one strong factor may offset the others. *Illinois v. Gates*, 462 U.S. 213 (1983).

Other factors for the Court are the source's personal knowledge, *United States v. Greene* 250, F3d 471 (6th Cir. 2001); the willingness of the source to reveal his name, *United States v. Jackson*, 470 F.3d 299, 307(6th Cir. 2006); statements against penal interest, *United States v. Harris*, 403 U.S. 573, 583 (1971); independent police corroboration, *United States v Taylor*; 2008 WL 4997498 (6th Cir. 2008) and, cross corroboration, *Lancaster, supra*).

The following facts, verified by law enforcement, provide a consistent "flow," bolstering Watson's reliability:

- Charles Moesher had fifteen guns stolen from his home, which were securely locked in a locked safe. One of the firearms was a Ruger machine gun, legally owned and

6

registered in the National Firearms Registration and Transfer Record;

- Richard McCormick, a multi-convicted felon, was Moesher's step-son and stole the aforementioned weapons, including the machine gun;

- Brian White, when interviewed by ATF, told the agents McCormick tried to sell him the machine gun, emphasizing the cost and uniqueness. McCormick e-mailed White photographs of the machine gun, a .22 caliber handgun and two magazines. McCormick told White the handgun was stolen and offered to sell the machine gun cheap;

- Lorain Police did a buy-bust on Kevin Watson, a multi-convicted felon, who stated he got all of his guns from McCormick and got rid of them already;

- Watson was interviewed and told the agents he brokered the sale of the machine gun from McCormick to Defendant, aka "Face." Watson said Defendant gave him $500 and some cocaine. Watson had several conversations with Defendant and Defendant told Watson he wanted to keep the machine gun because it was unique. Defendant is a multi-convicted felon;

- Law enforcement verified Defendant's current address via Ohio Motor Vehicle records.

In determining whether Watson's information was reliable, the Court looked at the "bookends," to wit, the facts and circumstances which occurred before and after Watson's information. Put another way, is Watson's information consistent and in line with the "flow" of information law enforcement was able to gather up to the point, and after his interview? The answer is, yes. Add to that his statement against penal interest noted in *Harris*, *supra*, and his reliability is bolstered.

Further, the Sixth Circuit, in a recent decision upholding this Court's determination

of reliability in another Motion to Suppress, noted the importance of being "put through the crucible of a thorough interview by the police." *United States v. Ruth* No.11-3937 (6th Cir. Jul. 31, 2012). As in this case, the agents were able to "observe (his) demeanor and credibility" and "to hold him accountable if his story was later found to have been falsified." *Ruth* at *5. See also *Henness v. Bagley,* 644 F.3d 308,3189-19 (6th Cir. 2011). Finally, the *Ruth* court, in citing *Henness,* stated that " This Circuit has found such circumstance highly probative in assessing reliability of a tip from a previously unknown informant." *Id.*

Therefore, the Court, based upon Sixth Circuit precedent and using a common sense approach in assessing the information in the Affidavit, holds that Watson's information was reliable and supported the issuance of the Warrant.

C. NEXUS

The Court has set forth above all of the facts, circumstances and findings necessary to support its holding that the machine gun would probably be found in Defendant's residence. As stated previously, the economic value, uniqueness, durability and "thrill of danger," in addition to the agent's training and experience, support the Magistrate's finding that the machine gun would, in all probability, be found in Defendant's residence. See *Pritchett*, *supra* (in support of durability as a reason for firearms in the home) and *Lancaster*, *supra*, (for an agent's training and experience that weapons tend to be kept in the home as relevant).

Finally, Defendant's own statement that he "did not want to get rid of it (the machine gun) because it was so unique," (Affidavit par.4), indicates a high degree of permanency. Couple that with the "fact that the place to be searched was the defendant's home, suggests that there was some permanence to the defendant's base of operations." *United States v.*

*Greene*, 250 F3d 471,481 (6thCir. 2001). The Court finds there was a sufficient nexus between the place to be searched and the object of the search, to wit, the Ruger machine gun.

## **CONCLUSION**

Based upon the aforementioned analysis, the Court finds that the Magistrate Judge had a legal basis to issue the Search Warrant and therefore, DENIES Defendant's Motion to Suppress without an evidentiary hearing.

IT IS SO ORDERED.

Dated: 8/1/2012

      *S/Christopher A. Boyko*
      CHRISTOPHER A. BOYKO
      UNITED STATES DISTRICT JUDGE